**UNITED STATES DISTRICT COURT**

**DISTRICT OF MINNESOTA**

KAY CARLSEN,

Plaintiff,

v.

GREEN THUMB, INC.,

Defendant.

Civil No. 01-2076 (JRT/RLE)

**MEMORANDUM OPINION AND ORDER**

Patrick Michael Connor, CONNOR SATRE & SCHAFF, 10 South Fifth Street, Suite 925, Minneapolis, MN 55402, for plaintiff.

Thomas A. Harder, FOLEY & MANSFIELD, 250 Marquette Avenue, Suite 1200, Minneapolis, MN 55401, for defendant.

Plaintiff Kay Carlsen worked for defendant Green Thumb from 1995 until she was terminated in 2001. Carlsen claims that she was terminated because she was disabled, or because she requested FMLA leave. She brought this lawsuit alleging defendant violated the Family Medical Leave and the Minnesota Human Rights Act.[1] Defendant Green Thumb ("Green Thumb") is a national non-profit organization that distributes federal

[1] Plaintiff's complaint also contains a claim for common law defamation, but plaintiff agreed to a voluntary dismissal of this claim and the parties stipulated to that dismissal. [Docket No. 35].

FILED FEB - 4 2004
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD. ______
DEPUTY CLERK ______

funds. Defendant counterclaimed, seeking restitution for funds that defendant alleges were improperly distributed as a result of plaintiff's negligence.

Both parties have moved for summary judgment. Defendant moved for summary judgment on all of plaintiff's claims. Plaintiff requests summary judgment on defendant's counterclaims, and defendant opposed the motion, and cross-moved for summary judgment in its favor on the counterclaims. For the reasons discussed below, the Court grants defendant's motion for summary judgment on plaintiff's MHRA claims, but in all other respects, denies defendant's motions. The Court also denies plaintiff's motion for summary judgment on defendant's counterclaim.

## BACKGROUND

### I. PARTIES

Green Thumb[2] is a national nonprofit organization that offers training, employment and community service opportunities for low-income, older workers, primarily in rural communities. The program at issue here is the Senior Community Service Employment Program, which is funded by Title V of the Older Americans Act. Grant money for the program is overseen by the Department of Labor. Defendant screens individuals for eligibility, and places individuals in employment or training positions. Program participants can be placed only in eligible organizations, which include public organizations and non-profits that hold current § 501(c)(3) tax-exempt

[2] Since this lawsuit was filed, Green Thumb has changed its name to "Experience Works." The parties continue to refer to the defendant as "Green Thumb" and the Court will follow that practice as well.

status. If ineligible individuals are placed, or if placement occurs in ineligible organizations, defendant is responsible for reimbursing the "disallowed" costs. In addition, defendant could be liable under the False Claims Act. Defendant claims that due to plaintiff's negligence, defendant must reimburse approximately $60,000 in "disallowed" expenses.

## II. PLAINTIFF'S EMPLOYMENT

Green Thumb hired plaintiff in July of 1995 as a "Field Office Coordinator" ("FOC"). Her duties included training and supervising a staff of "Field Operations Assistants" ("FOA"). FOA's are responsible for the intake of information and also assist applicants in filling out eligibility forms. Only those individuals making no more than 125% of the poverty level are eligible. It was plaintiff's responsibility to verify that the FOA's reports were accurate and to ensure that both the applicant, and the organization in which the applicant was placed, were eligible.

Plaintiff was very good at some aspects of her job, and she was one of the highest performing FOCs in terms of placing applicants. However, she had trouble with paperwork (both with accuracy and with timeliness), and this part of her performance was an issue as early as April of 1996. Plaintiff received mixed performance reviews, and several reviews indicated that her paperwork skills needed improvement.

In early 1997, plaintiff enrolled two ineligible individuals. In 1996 and 1997, several of plaintiff's FOAs resigned. The FOA's resignation letters raised serious

concern about plaintiff's management style, and plaintiff's ability to follow the mandatory regulations.

In December of 1997, plaintiff met with State Director Paul Anderson to discuss plaintiff's performance. After the meeting, Anderson created a corrective action plan for plaintiff intended to correct her deficiencies with paperwork. Plaintiff's performance seemed to improve. Despite this seeming improvement, she continued to enroll ineligible individuals, and enrolled them in ineligible organizations.

Defendant did not realize that plaintiff had enrolled more ineligible individuals until April 2001, when Anderson discovered that an ineligible participant had been placed at an ineligible organization. As he was investigating that placement, he found that two other ineligible participants had been enrolled by plaintiff. Defendant terminated plaintiff's employment after Anderson investigated these ineligible placements and determined that they were plaintiff's responsibility. Anderson concluded that plaintiff had violated company policy and federal regulations by failing to document the applicants' incomes, and she had made false statements as to what documentation she reviewed.

Anderson claims that he made the decision to terminate plaintiff's employment near the end of June. He began drafting the termination letter on July 2, 2001, but then met with plaintiff again on July 3, 2001 to offer her an opportunity to explain the mistakes. Not satisfied with her response, he revised the letter. He did not, however, re-date the letter, and it was sent with an incorrect date. On July 5, 2001 Anderson e-mailed Carlsen to tell her he was overnighting a letter to her, and that it would require her

immediate attention. That same day, plaintiff filed a grievance. The grievance noted that Anderson had asked her to resign on July 3, 2001.

Plaintiff told Anderson she would be taking July 5 and 6 off work for appointments. She then was on vacation in Las Vegas, and was not scheduled to return until July 17. Anderson had approved her vacation prior to his decision to terminate her employment.

Upon her return, Regional Manager Jean Bennett interviewed her regarding the grievance. Bennett talked to several other individuals, and determined that plaintiff's grievance was not meritorious. On July 20, 2001 Anderson and Bennett wrote to plaintiff and confirmed that she was terminated from Green Thumb.

## III. PLAINTIFF'S HEALTH

Plaintiff suffered a heart attack in 1999. She was hospitalized for two days, and then participated in a cardiac rehabilitation program. She missed two days of work, and then returned full time. Then in May of 2001 she was hospitalized overnight because she complained of chest pains. She was released with a recommendation to work half days. Plaintiff does not recall if she worked half days, or if she asked Anderson for permission to work only half days. However, she notes that she worked half-days as needed. (*See* Carlsen depo. at 413-14.)

Plaintiff claims that her heart attack interferes with several activities, including gardening, snowmobiling, and housework. She also claims that she cannot travel alone anymore, and that she has to rotate sitting and standing. Plaintiff acknowledges that she

exercises daily, walking or biking two to five miles per day. In plaintiff's complaint, she claims that her heart problems interfere with her daily life activity of walking and working because she cannot exert herself for extended periods of time as can a person without a heart condition.

## IV. PLAINTIFF'S REQUEST FOR LEAVE

In plaintiff's grievance submitted on July 3, 2001, she claimed that she had requested leave "at the initial conversation, only a week after I had been in the hospital. . . . I was denied that request." She then goes on to suggest that she was being singled out because of her "heart condition and disability." She claims "Since my coronary attack two years ago and because of my present heart condition disability, Director Anderson has treated me differently."

In plaintiff's complaint, she claims she requested leave on July 3, 2001 during her meeting with Anderson.[3] Her complaint states that the leave was not planned, but that it became necessary for her health.

In her motion papers, she indicates that Anderson was on notice of her need for FMLA leave because Anderson overheard her tell her assistant, "I'm waiting for callbacks from a couple of doctors." At oral argument, counsel for plaintiff clarified that it is plaintiff's position that the FMLA leave request was made orally to Anderson about a week after her hospitalization for chest pains. Plaintiff claims that Anderson denied the request.

---

[3] *See* Complaint at paragraph 23.

## ANALYSIS

### I. STANDARD OF REVIEW

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56. Only disputes over facts that might affect the outcome of the suit under the governing substantive law will properly preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is not appropriate if the dispute about a material fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* Summary judgment is to be granted only where the evidence is such that no reasonable jury could return a verdict for the nonmoving party. *Id.*

The moving party bears the burden of bringing forward sufficient evidence to establish that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The nonmoving party is entitled to the benefit of all reasonable inferences to be drawn from the underlying facts in the record. *Vette Co. v. Aetna Casualty & Surety Co.*, 612 F.2d 1076, 1077 (8th Cir. 1980). However, the nonmoving party may not merely rest upon allegations or denials in its pleadings, but it must set forth specific facts by affidavits or otherwise showing that there is a genuine issue for trial. *Forrest v. Kraft Foods, Inc.*, 285 F.3d 688, 691 (8th Cir. 2002).

## II. PLAINTIFF'S CLAIMS

### A. Disability Discrimination

Plaintiff claims that her heart condition renders her disabled. She also argues that Anderson perceived her as disabled and that perception contributed to the decision to terminate her employment. Plaintiff also argues that her request for medical leave was a request for accommodation, and that the denial of that request violates the MHRA.[4]

Under the MHRA, it is an unfair employment practice for an employer to discharge an employee because of a disability. Minn. Stat. § 363.03, subd. 1(2) (2001).[5] When an employer knows of an employee's disability, the employer must provide reasonable accommodations for the employee. *Hoover v. Norwest Private Mortgage Banking*, 632 N.W.2d 534, 547 (Minn. 2001).

A person is disabled under the MHRA if he or she fits any of three categories: "(1) has a physical, sensory, or mental impairment which materially limits one or more major life activities; (2) has a record of such impairment; or (3) is regarded as having such an impairment." Minn. Stat. § 363.01, subd. 13 (2001)[6]. Minnesota courts look to federal Americans with Disabilities Act ("ADA") cases when analyzing MHRA disability claims. *See Cramer v. Allina Health Sys.*, 2003 WL 22952381 at *2 (Minn. Ct. App.

---

[4] Plaintiff's complaint does not contain a cause of action pursuant to the Americans with Disabilities Act.

[5] This statute has been renumbered, and can be found at Minn. Stat. § 363A.08, subd. 2 (2003).

[6] Now found at Minn. Stat. § 363A.03, subd. 12 (2003).

Dec. 16, 2003) (noting that Minnesota "courts have customarily followed and applied federal law to various aspects of discrimination claims"); *see also Maziarka v. Mills Fleet Farm*, 245 F.3d 675, 678 n.3 (8th Cir. 2001) (noting that the MHRA parallels the ADA). However, while the ADA requires that an individual be **substantially** limited in a major life activity, the MHRA requires a less stringent standard of **materially** limited in a major life activity. See *Hoover v. Norwest Private Mortgage Banking*, 632 N.W.2d 534, 543 n.5 (Minn. 2001) (citing 42 U.S.C. § 12102(2)) (distinguishing between the ADA definition of disability as a "substantial limitation," and Minnesota's less stringent "material limitation" standard.[7] Although the "material" standard is less stringent, "[d]etermining whether an impairment materially limits a major life activity is a threshold question that is guided by the relevant ADA regulations." *McEachern v. Prime Hospitality Corp.*, 2003 WL 21057078 *4 (D. Minn. May 8, 2003) (citing *Snow v. Ridgeview Med. Ctr.*, 128 F.3d 1201, 1206 (8th Cir.1997) (evaluating MHRA disability claim by reference to definitions provided in federal regulations)). A person is materially or substantially limited in a major life activity if such individual is: (i) Unable to perform a major life activity that the average person in the general population can perform; or (ii) Significantly restricted as to the condition, manner, or duration under which [the] individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j).

---

[7] All other issues arising under the MHRA, however, can be analyzed using federal law and standards. See *Sigurdson v. Carl Bolander & Sons, Co.*, 532 N.W.2d 225, 228 (Minn. 1995).

Under both the ADA and the MHRA, the determination of disability is a highly fact-intensive one. *Hoover,* 632 N.W.2d at 543; *Land v. Baptist Med. Ctr.*, 164 F.3d 423, 425 (8th Cir. 1999). Nonetheless plaintiff offers insufficient evidence that would allow a fact-finder to determine that her heart condition amounts to a disability that materially interferes with a major life activity. A heart attack, or having a heart condition, by itself, is not a disability. *See Webber v. Strippit, Inc.*, 186 F.3d 907 (8th Cir. 1999) (ADA case). The activities plaintiff claims are impacted by her condition include gardening, snowmobiling, and housework. Those activities, however, are not "major life activities." *Webber*, 186 F.3d at 913-14 (holding that "shoveling snow, gardening, mowing the lawn, playing tennis, fishing, and hiking" did not qualify as "major life activities"); *see also Alexander v. The Northland Inn*, 2002 WL 236703 at *4 (D. Minn. Feb. 15, 2002) (holding that former cleaning person's complete inability to vacuum was not substantial limitation on major life activity). Further, the interference must be **material**. *See e.g., Webber*, 186 F.3d at 914 (noting that while plaintiff faced dietary restrictions and had difficulty walking long distances or climbing stairs without getting fatigued, these were moderate limitations and did do not suffice to constitute a "disability").

Although the Court does not doubt plaintiff's claims that walking is impacted by her heart condition, and that she must alternate between sitting and standing, plaintiff has not shown that such interference is material. Plaintiff can walk several miles per day. The record also reflects that plaintiff was able to continue in her job, which involved sitting in some instances, without significant or material interference. Therefore, plaintiff

has not met the "demanding" standard of "disability" as that term has been defined in the MHRA and ADA.

Similarly, plaintiff has not established that her employee perceived her as disabled. As evidence that Anderson perceived plaintiff as disabled, she points to statements by her supervisors that she has or had "health issues." However, supervisor's mere awareness of an employee's condition is not sufficient to show that the employer regarded the employee as disabled. *Hayes v. Blue Cross Blue Shield of Minn., Inc.*, 21 F. Supp. 2d 960, 972 n.7 (D. Minn. 1998). In addition, to satisfy this standard, the plaintiff must point to evidence that the employer viewed her as having an impairment that materially limits a major life activity. *See Weber*, 186 F.3d at 915. There is no evidence in the record that Anderson viewed plaintiff as materially limited in a major life activity.

If plaintiff could establish that her heart condition renders her disabled as that term is understood in the MHRA context, defendant would then need to articulate a legitimate business reason for the termination. Defendant does so by pointing to plaintiff's poor performance record in placing ineligible individuals in ineligible organizations. These concerns had been voiced before plaintiff suffered a heart attack.

Plaintiff cannot show that the legitimate business reason was "pretext" or that she would ultimately prevail on her claim. Plaintiff indicates that other employees who made similar errors, but who were not disabled, were not fired. However, the record reflects that the magnitude of plaintiff's errors, and the resulting costs to the organization, are far greater than errors committed by other employees. In addition, defendant asserts that

plaintiff falsified records, for example, she would indicate that she had examined bank statements, when she had not. There is no indication that other employees falsified records but were not discharged.

Plaintiff has not shown that she is disabled, as that term is defined by relevant law. Even if she did establish a disability, defendant's legitimate business reason is well supported. Defendant is therefore entitled to summary judgment on the MHRA disability discrimination claim.

For these same reasons, defendant is entitled to summary judgment on plaintiff's claim premised on a failure to accommodate. An employer violates the MHRA by failing "to make reasonable accommodation to the known disability of a qualified disabled person." Minn. Stat. § 363.03, subd. 1(6) (2001).[8] Reasonable accommodation "means steps which must be taken to accommodate the known physical or mental limitations of a qualified disabled person." *Id.* Because plaintiff has not established that she was disabled or perceived as disabled, she cannot maintain an accommodation claim.

**B. FMLA**

The FMLA, 29 U.S.C. §§ 2611 *et seq.*, provides that an eligible employee may take a total of 12 weeks of unpaid leave during a 12-month period if a serious health condition makes the employee unable to perform the functions of the employee's position. 29 U.S.C. § 2612(a)(1)(D). The FMLA creates two types of claims, the first

---

[8] The statute has been renumbered, and is now found at Minn. Stat. § 363A.08, subd. 6 (2003).

are referred to as "interference" or (a)(1) claims, in which an employee asserts that an employer denied or otherwise interfered with his or her substantive rights under the FMLA. Interference claims are premised on 29 U.S.C. § 2615(a)(1), which provides that it is "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided." Plaintiff in this case alleges that defendant violated § 2615(a)(1) by **interfering** with her ability to take FMLA leave when defendant terminated her instead of granting her request for leave.

To state a claim for an (a)(1) violation, an employee "need only demonstrate by a preponderance of the evidence that he was entitled to the benefit denied." *Strickland v. Water Works and Sewer Bd.*, 239 F.3d 1199, 1206-07 (11th Cir. 2001); *see also Rankin v. Seagate Tech., Inc.*, 246 F.3d 1145, 1148 (8th Cir. 2001); *Jennings v. Mid-American Energy Co.*, 2003 WL 22176002 (S.D. Iowa Sept. 17, 2003) ("Where an employee states a claim of interference with a substantive right, an objective test applies, requiring the employee to show, by a preponderance of the evidence, that she was entitled to the benefit denied.").

The FMLA also provides protection in the event an employee is discriminated against for exercising rights granted by the FMLA. Specifically, it provides that "[i]t shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." 29 U.S.C. § 2615(a)(2). Claims for retaliation are characterized as (a)(2) claims. Plaintiff appears to plead both an interference and retaliation claim.

For the purposes of this motion, defendant concedes that plaintiff had a "serious health condition," there is no dispute that she was an eligible employee. Defendant premises its summary judgment motion on the argument that plaintiff did not make a request for FMLA leave. Both retaliation and interference claims require that the plaintiff show that she made a request for leave.

Because the Court is required to construe all evidence in the light most favorable to the plaintiff, and because the Court cannot make credibility determinations at the summary judgment stage, the Court must deny defendant's motion for summary judgment on plaintiff's claim for interference with her FMLA rights. Plaintiff's shifting argument regarding when she asked for leave is of concern to the Court. However, it will be up to the finder of fact to determine whether such a request was made, and if made, if it was denied. Nonetheless, plaintiff has raised a colorable claim of FMLA interference.

The Court will not allow plaintiff's claim for retaliation under the FMLA to proceed. Unlike the strict liability imposed in this Circuit for violations of employees' FMLA rights based on "interference" or (a)(1) claims, the employer's motive is relevant to "retaliation" or (a)(2) claims. Retaliation claims are analyzed under the familiar *McDonnell-Douglas* burden shifting analysis.[9] *See Smith v. Allen Health Sys., Inc.*, 302

---

[9] This Court has discussed the ramifications of the Supreme Court's opinion in *Desert Palace, Inc. v. Costa*, 123 S. Ct. 2148 (2003) on the *McDonnell Douglas* analysis. This Court concludes that "*McDonnell Douglas* burden-shifting paradigm must only be *modified* in light of *Desert Palace*, § 2000e-2(m), and *only in its final stage*, so that it is framed in terms of whether the plaintiff can meet his or her "ultimate burden" to prove intentional discrimination, rather than in terms of whether the plaintiff can prove "pretext." *Dunbar v. Pepsi-Cola General Bottlers of Iowa, Inc.*, 285 F. Supp. 2d 1180, 1187 (N.D. Iowa 2003). For a full discussion of -Continued-

F.3d 827, 832 (8th Cir. 2002); *see also Rankin v. Seagate Tech., Inc.*, 246 F.3d 1145, 1148 (8th Cir. 2001) (declining to apply burden shifting to (a)(1) claim where plaintiff had been fired after taking FMLA leave) (citing *Hodgens v. General Dynamics Corp.*, 144 F.3d 151, 159-60 (1st Cir. 1998) (noting that "the employer's subjective intent is not relevant. The issue is simply whether the employer provided its employee the entitlements set forth in the FMLA.")).

Plaintiffs retaliation claim essentially rests on the fact that she was terminated shortly after allegedly requesting leave. Although temporal proximity is relevant, it is not sufficient in itself to establish a retaliation case. In this instance, the evidence of temporal proximity is significantly undermined by plaintiff's longstanding problem with accuracy, in a position where accuracy was essential. Plaintiff has not offered evidence that she will be able to meet her "ultimate burden" of proving intentional discrimination. *Dunbar v. Pepsi-Cola General Bottlers of Iowa, Inc.*, 285 F. Supp. 2d 1180, 1187 (N.D. Iowa 2003).

## III. DEFENDANT'S COUNTER-CLAIM FOR NEGLIGENCE[10]

Summary judgment in a negligence action is appropriate if the record does not support any one of the elements required to establish the negligence claim: (1) duty;

---

this Court's analysis, see *Brown v Weststaff (USA), Inc.*, 02-1696 (JRT/JSM) (D. Minn. Jan. 12, 2004).

[10] Defendant requests permission to amend its counterclaim to add the claim of common law fraud. The Court denies this request as untimely and unacceptably prejudicial to the plaintiff.

(2) breach of that duty; (3) injury; and (4) proximate cause. *Louis v. Louis*, 636 N.W.2d 314, 318 (Minn. 2001). The existence of a duty is a question of law. *Larson v. Larson*, 373 N.W.2d 287, 289 (Minn. 1985).

Defendant argues that plaintiff had a duty to submit true and accurate records or statements regarding individual's eligibility, but that she willfully or negligently submitted false ones. Defendant characterizes plaintiff's duty as the duty to exercise due care discharging her employment responsibilities. Defendant further argues that plaintiff breached her duty by falsifying records and by failing to verify eligibility. Finally, defendant claims that plaintiff's breach caused damages in the form of "disallowed costs." The record contains evidence from which a finder of fact could determine that defendant has established each element of defendant's claim.

Plaintiff argues that she is entitled to indemnification pursuant to Minn. Stat. § 181.970, which provides that " An employer **shall defend and indemnify** its employee for civil damages, penalties, or fines claimed or levied against the employee, provided that the employee: (1) was acting in the performance of the duties of the employee's position; (2) was not guilty of intentional misconduct, **willful neglect** of the duties of the employee's position, or bad faith . . ." (Emphasis added.) However, the next subdivision of the statutory section provides that "Subdivision 1 does not apply to . . . (3), employees and employers who are governed by indemnification provisions under section 300.083, 302A.521, **317A.521**, or 322B.699, or similar laws of this state or another state specifically governing indemnification of employees of business or **nonprofit corporations**, limited liability companies, or other legal entities." (Emphasis added.)

The statutory section that appears potentially applicable here is Minn. Stat. § 317A.521. This section requires nonprofit corporations to indemnify employees if, among other requirements, the person acted in good faith and reasonably believed his or her conduct was in the best interest of the corporation. Neither party addressed this statutory section in the voluminous briefing. The Court finds that the statute does not immunize plaintiff from this lawsuit, or from liability, because whether plaintiff acted in good faith, and whether she reasonably believed her conduct was in the best interest of the corporation are fact intensive questions that cannot be determined on this record.

Plaintiff seems to argue that employees cannot be held liable to employers for losses resulting from the employee's misconduct or negligence. However, it is "'well settled that an employer is entitled to recover from the employee damages which the employer was compelled to pay because of the employee's negligence.'" *Schneider v. Buckman*, 433 N.W.2d 98, 102 (Minn. 1988); *see also Oelschlager v. Magnuson*, 528 N.W.2d 895, 899 (Minn. Ct. App. 1995).

For the above reasons, plaintiff's motion for summary judgment on defendant's counterclaim is denied.

**ORDER**

Based on the foregoing, all the records, files, and proceedings herein, **IT IS HEREBY ORDERED** that

1. Defendant's motion for summary judgment [Docket No. 19] is **GRANTED IN PART and DENIED IN PART** as follows:

a. Defendant's motion for summary judgment is **GRANTED** as to plaintiff's claims of disability discrimination under the MHRA. Count II of the complaint [Docket No. 1] is **DISMISSED with prejudice.**

b. Defendant's motion for summary judgment is **GRANTED** as to plaintiff's claim of retaliation under the FMLA, and **DENIED** as to plaintiff's claim of interference under the FMLA.

2. Plaintiff's motion for summary judgment on defendant's counterclaim [Docket No. 43] is **DENIED**.

3. Defendant's cross-motion for summary judgment on its counterclaim [see defendant's memorandum in support for summary judgment, Docket No. 23] is **DENIED**.

DATED: Feb. 4, 2004
Minneapolis, Minnesota.

John R. Tunheim
JOHN R. TUNHEIM
United States District Judge