**UNITED STATES DISTRICT COURT**

**DISTRICT OF MINNESOTA**

---

KAY CARLSEN,

Plaintiff,

v.

GREEN THUMB, INC.,

Defendant.

Civil No. 01-2076 (JRT/RLE)

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS**

---

Patrick Michael Connor, CONNOR SATRE & SCHAFF, 10 South Fifth Street, Suite 925, Minneapolis, MN 55402, for plaintiff.

Thomas A. Harder, FOLEY & MANSFIELD, 250 Marquette Avenue, Suite 1200, Minneapolis, MN 55401, for defendant.

This lawsuit involves a dispute between plaintiff Kay Carlsen and her former employer, defendant Green Thumb. Plaintiff claims violations of the FMLA and the MHRA, and defendant assert counterclaims, seeking restitution for funds allegedly improperly distributed as a result of plaintiff's negligence. In early February, the Court addressed cross-motions for summary judgment, and granted defendant's motion on plaintiff's MHRA claims, and denied the motions in all other respects.

Defendant has brought a Rule 12 motion for judgment on the pleadings, arguing that plaintiff has not stated a claim for interference under the Family Medical Leave Act ("FMLA"). For the reasons discussed below, defendant's motion is denied.

## BACKGROUND[1]

Green Thumb[2] is a national nonprofit organization that offers training, employment and community service opportunities for low-income, older workers, primarily in rural communities. The Senior Community Service Employment Program, at issue here, is funded by Title V of the Older Americans Act with grant money overseen by the Department of Labor. Defendant screens individuals for eligibility, and places individuals in employment or training positions. Program participants can be placed only in eligible organizations, which include public organizations and non-profits that hold current § 501(c)(3) tax-exempt status. If ineligible individuals are placed, or if placement occurs in ineligible organizations, defendant is responsible for reimbursing the "disallowed" costs. In addition, defendant could be liable under the False Claims Act. Defendant claims that due to plaintiff's negligence, defendant must reimburse approximately $60,000 in "disallowed" expenses.

Green Thumb hired plaintiff in July of 1995 as a "Field Office Coordinator" ("FOC"). Her duties included training and supervising a staff of "Field Operations Assistants" ("FOA"). FOAs are responsible for the intake of information and also assist applicants in filling out eligibility forms. Only those individuals making no more than 125% of the poverty level are eligible. It was plaintiff's responsibility to verify that the

[1] This discussion is adopted from the Court's background section in the summary judgment opinion and order of February 2, 2004.

[2] Since this lawsuit was filed, Green Thumb has changed its name to "Experience Works." The parties continue to refer to the defendant as "Green Thumb" and the Court will follow that practice as well.

FOA's reports were accurate and to ensure that both the applicant, and the organization in which the applicant was placed, were eligible.

Plaintiff was very good at some aspects of her job, and she was one of the highest performing FOCs in terms of placing applicants. However, she had trouble with paperwork (both with accuracy and with timeliness), and this part of her performance was an issue as early as April of 1996. Plaintiff received mixed performance reviews, and several reviews indicated that her paperwork skills needed improvement.

In early 1997, plaintiff enrolled two ineligible individuals. In 1996 and 1997, several of plaintiff's FOAs resigned. The FOA's resignation letters raised serious concern about plaintiff's management style, and plaintiff's ability to follow the mandatory regulations.

In December of 1997, plaintiff met with State Director Paul Anderson to discuss plaintiff's performance. After the meeting, Anderson created a corrective action plan for plaintiff intended to correct her deficiencies with paperwork. Plaintiff's performance seemed to improve. Despite this seeming improvement, she continued to enroll ineligible individuals, and enrolled them in ineligible organizations.

Defendant did not realize that plaintiff had enrolled more ineligible individuals until April 2001, when Anderson discovered that an ineligible participant had been placed at an ineligible organization. As he was investigating that placement, he found that two other ineligible participants had been enrolled by plaintiff. Defendant terminated plaintiff's employment after Anderson investigated these ineligible placements and determined that they were plaintiff's responsibility. Anderson concluded

that plaintiff had violated company policy and federal regulations by failing to document the applicants' incomes, and she had made false statements as to what documentation she reviewed.

Anderson claims that he made the decision to terminate plaintiff's employment near the end of June. He began drafting the termination letter on July 2, 2001, but then met with plaintiff again on July 3, 2001 to offer her an opportunity to explain the mistakes. Not satisfied with her response, he revised the letter. He did not, however, re-date the letter, and it was sent with an incorrect date. On July 5, 2001 Anderson E-mailed Carlsen to tell her he was overnighting a letter to her, and that it would require her immediate attention. That same day, plaintiff filed a grievance. The grievance noted that Anderson had asked her to resign on July 3, 2001.

Plaintiff told Anderson she would be taking July 5 and 6 off work for appointments. She then was on vacation in Las Vegas, and was not scheduled to return until July 17. Anderson had approved her vacation prior to his decision to terminate her employment.

Upon her return, Regional Manager Jean Bennett interviewed her regarding the grievance. Bennett talked to several other individuals, and determined that plaintiff's grievance was not meritorious. On July 20, 2001, Anderson and Bennett wrote to plaintiff and confirmed that she was terminated from Green Thumb.

Plaintiff suffered a heart attack in 1999. She was hospitalized for two days, and then participated in a cardiac rehabilitation program. She missed two days of work, and then returned full time. Then in May of 2001 she was hospitalized overnight because she

complained of chest pains. She was released with a recommendation to work half days. Plaintiff does not recall if she worked half days, or if she asked Anderson for permission to work only half days. However, she notes that she worked half days as needed. (*See* Carlsen depo. at 413-14.)

In plaintiff's grievance submitted on July 3, 2001, she claimed that she had requested leave "at the initial conversation, only a week after I had been in the hospital. . . . I was denied that request." She then goes on to suggest that she was being singled out because of her "heart condition and disability." She claims "Since my coronary attack two years ago and because of my present heart condition disability, Director Anderson has treated me differently." In plaintiff's complaint, she claims she requested leave on July 3, 2001 during her meeting with Anderson.[3] Her complaint states that the leave was not planned, but that it became necessary for her health.

In her summary judgment papers, she indicates that Anderson was on notice of her need for FMLA leave because Anderson overheard her tell her assistant, "I'm waiting for callbacks from a couple of doctors." At oral argument, counsel for plaintiff clarified that it is plaintiff's position that the FMLA leave request was made orally to Anderson about a week after her hospitalization for chest pains. Plaintiff claims that Anderson denied the request.

[3] *See* Complaint at paragraph 23.

## ANALYSIS

### I. STANDARD OF REVIEW

Rule 12 of the Federal Rules of Civil Procedure allows the Court to dismiss a claim for failure to state a claim; a motion to dismiss for failure to state a claim may be brought "by motion for judgment on the pleadings, or at the trial on the merits." Fed. R. Civ. P. 12(h)(2). Such a motion is akin to a motion to dismiss for failure to state a claim brought pursuant to Rule 12(c), and the Eighth Circuit directs that the same standards apply. *Westcott v. City of Omaha,* 901 F.2d 1486, 1488 (8th Cir. 1990) (motion to dismiss filed after answer asserting failure to state a claim treated as a motion for judgment on the pleadings and Rule 12(c) standard applied); *Local 2, Int'l Broth. of Elec. Workers, AFL-CIO v. Anderson Underground Constr., Inc.*, 1988 WL 125710 (W. D. Mo. Nov. 7, 1998) (addressing motion to dismiss brought pursuant to 12(h)(2) despite nonmoving party's objection as to timeliness).

Rule 12(c) allows a party to move for judgment on the pleadings after responsive pleadings have been filed. Fed. R. Civ. P. 12(c) ("After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings."). The Court applies the same standard in a 12(c) motion as that applied in a 12(b)(6) motion to dismiss. *Westcott v. Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990) (citing *Morgan v. Church's Fried Chicken,* 829 F.2d 10, 11 (6th Cir. 1987) (collecting cases)). That is, the Court grants the motion "'only if it is dear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" *Handeen v. Lemaire,* 112 F.3d 1339, 1347 (8th Cir. 1997) (quoting *Hishon v. King &*

*Spalding*, 467 U.S. 69, 73 (1984)). The Court assumes "that well-pleaded factual allegations in the complaint are true 'and construe[s] the complaint, and all reasonable inferences arising therefrom, most favorably to the pleader.'" *Westcott*, 901 F.2d at 1488 (quoting *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986)). In so doing, however, the Court does not "blindly accept the legal conclusions drawn by the pleader from the facts." *Id.*

## II. FMLA

The Court's prior analysis of plaintiff's FMLA claim in the context of defendant's motion for summary judgment informs the analysis here. At the risk of redundancy, the Court reiterates its preliminary discussion of FMLA "interference" claims.

The FMLA, 29 U.S.C. §§ 2611 *et seq.*, provides that an eligible employee may take a total of 12 weeks of unpaid leave during a 12-month period if a serious health condition makes the employee unable to perform the functions of the employee's position. 29 U.S.C. § 2612(a)(1)(D). The FMLA creates two types of claims, the first are referred to as "interference" or (a)(1) claims, in which an employee asserts that an employer denied or otherwise interfered with his or her substantive rights under the FMLA. Interference claims are premised on 29 U.S.C. § 2615(a)(1), which provides that it is "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided." Plaintiff Carlsen alleges that defendant violated § 2615(a)(1) by interfering with her ability to take FMLA leave when defendant terminated her instead of granting her request for leave.

To state a claim for an (a)(1) violation, an employee "need only demonstrate by a preponderance of the evidence that [s]he was entitled to the benefit denied." *Strickland v. Water Works and Sewer Bd.*, 239 F.3d 1199, 1206-07 (11th Cir. 2001); *see also Rankin v. Seagate Tech., Inc.*, 246 F.3d 1145, 1148 (8th Cir. 2001); *Jennings v. Mid-American Energy Co.*, 2003 WL 22176002 (S.D. Iowa Sept. 17, 2003) ("Where an employee states a claim of interference with a substantive right, an objective test applies, requiring the employee to show, by a preponderance of the evidence, that she was entitled to the benefit denied.").

Under the FMLA, an employer is liable for "any wages, salary, employment benefits, or other compensation denied or lost to such employee by reason of the violation." 29 U.S.C. § 2617(a)(1)(A)(i)(I). Defendant urges the Court to dismiss this claim, arguing that plaintiff cannot establish damages, therefore her claim fails as a matter of law. Defendant argues that nominal damages are not available under the FMLA.[4]

It is true that some courts that have addressed this issue have determined that the FMLA does not provide for nominal damages. *Coleman v. Potomac Elec. Power Co.*, 281 F. Supp. 2d 250, 254 (D.D.C. 2003) (noting that "[o]ther kinds of damages--punitive damages, nominal damages, or damages for emotional distress--are not recoverable"

[4] Defendant also reiterates its argument that damages for emotional distress are not available under the FMLA. The Court notes that plaintiff's argument that such damages are available pursuant to the Eighth Circuit's opinion in *Duty v. Norton-Alcoa Proppants*, 293 F.3d 481 (8th Cir. 2002) is preserved, and nothing in this Opinion alters the Court's previous analysis of that issue.

under the FMLA) (quoting *Walker v. U.P.S.*, 240 F.3d 1268, 1278 (10th Cir. 2001) (upholding dismissal of FMLA claim and noting "[b]ecause nominal damages are not included in the FMLA's list of recoverable damages, nor can any of the listed damages be reasonably construed to include nominal damages, Congress must not have intended nominal damages to be recoverable under the FMLA.")); *Cianci v. Pettibone Corp.*, 152 F.3d 723, 728-29 (7th Cir. 1998) (holding that a plaintiff had no claim under the FMLA where the record showed that she suffered no diminution of income and incurred no costs as a result of an alleged FMLA violation) The weight of authority supports defendant's argument regarding nominal damages. However, the Eighth Circuit has not addressed this issue, and there is some contrary authority in reported caselaw. *See, e.g.*, *McDonnell v. Miller Oil Co.*, 134 F.3d 638 (4th Cir. 1998) (holding that attorney's fees were available under FMLA where jury awarded only nominal damages with no discussion of propriety of nominal damages).

Even if defendant's argument regarding nominal damages is accurate, defendant is not entitled to judgment on the pleadings for the FMLA interference claim. Plaintiff alleges that she requested FMLA leave in early June of 2001. When that leave was denied, plaintiff claims that she was forced to take vacation time in July to reduce the tension and stress caused by her heart condition.[5] If plaintiff establishes an FMLA interference claim, plaintiff could be entitled compensation for vacation time, which is

[5] The Court stresses that in this motion for judgment on the pleadings, it is improper to resolve the motion by reliance on matters outside the pleadings.

arguably "any wages, salary, employment benefits, or other compensation denied or lost to such employee by reason of the violation." 29 U.S.C. § 2617(a)(1)(A)(i)(I).

## ORDER

Based on the foregoing, all the records, files, and proceedings herein, **IT IS HEREBY ORDERED** that defendant's motion for judgment on the pleadings [Docket No. 49] is **DENIED**.

DATED: May 21, 2004
Minneapolis, Minnesota.

s/ John R. Tunheim
JOHN R. TUNHEIM
United States District Judge